Jennifer R. Murray, OSB #100389
Email: jmurray@tmdlegal.com
Toby J. Marshall, *Admitted Pro Hac Vice*
Email: tmarshall@tmdlegal.com
3600 Fremont Avenue North
Seattle, Washington  98103
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
AT PORTLAND

| | |
|---|---|
| TYSON KOSKI, KEVIN RICKEY and JOHN SCHLICHENMAYER, on behalf of themselves and all others similarly situated, | NO. CV 10-1307 MO |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| PRINCE TELECOM, LLC, a Delaware limited liability company, f/k/a PRINCE TELECOM, INC., | CLASS ACTION ALLEGATION |
| Defendant. | |

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION AND RELIEF REQUESTED .......................................... 1

II.   STATEMENT OF FACTS ............................................................................. 2

    A.    Factual and Procedural Background .................................................. 2

    B.    The Proposed Settlement .................................................................... 3

III.  AUTHORITY AND ARGUMENT ................................................................. 7

    A.    Settlement and Class Action Approval Process ................................. 7

    B.    The Parties' Settlement Meets the Criteria for Preliminary Approval ............... 8

        1.    The Settlement Is a Product of Serious, Informed and Arm's-Length Negotiations ................................................. 9

        2.    The Settlement Provides Substantial Relief to the Settlement Class and Treats All Settlement Class Members Fairly ....................... 10

        3.    The Settlement Is Fair and Reasonable in Light of the Alleged Claims and Defenses ....................................... 11

        4.    The Settlement Class Representative Enhancement Awards Are Reasonable ................................................. 13

        5.    The Fees and Costs Payment Is Fair and Reasonable ......................... 13

            a.    The Percentage of the Fund Analysis Supports Counsel's Fee Request ....................................... 13

            b.    Lodestar Analysis Supports Counsel's Fee Request ............... 17

    C.    Provisional Certification of the Settlement Class Is Appropriate ................... 20

        1.    The Requirements of Rule 23 Are Satisfied ........................................ 20

        2.    Certification of the FLSA Claims Is Appropriate ............................... 21

    D.    The Proposed Notice Program Is Constitutionally Sound ................................ 21

E.    The Scheduling of a Final Fairness Hearing Is Appropriate ............................ 23

F.    The Court Should Issue an Injunction Prohibiting Duplicative Actions .......... 24

IV.    CONCLUSION ......................................................................................................... 26

# TABLE OF AUTHORITIES

Page No.

## FEDERAL CASES

*Barcia v. Contain-A-Way*,
   No. 07 cv 938-IEG-JMA, 2009 WL 587844 (S.D. Cal. March 6, 2009) ........................16

*Behrens v. Wometco Enter., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988) ....................................................................................19

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ..........................................................................................20

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ........................................................................................................14

*Carlough v. Amchem Products, Inc.,*
   10 F.3d 189 (3rd Cir. 1993) ............................................................................................25

*Chem. Bank v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec Litig.)*,
   19 F.3d 1291 (9th Cir. 1994) .....................................................................................14, 17

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ....................................................................................7, 8, 9

*Dombrowski v. Pfister*,
   380 U.S. 479 (1965) ........................................................................................................25

*Glass v. UBS Fin. Servs., Inc.*,
   331 Fed. Appx. 452, 2009 WL 1360920 (9th Cir. May 14, 2009).................................16

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)....................................................................................24, 25

*Hopson v. Hanesbrands Inc.*,
   No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. April 3, 2009).............................16

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989)...............................................................................15

*In re Baldwin-United Corp.*,
   770 F.2d 328 (2d Cir. 1985) ...............................................................24, 25

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..............................................19

*In re Media Vision Tech. Sec. Litig.*,
   913 F. Supp. 1362 (N.D. Cal. 1996)...................................................19

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
   227 F.R.D. 553 (W.D. Wash. 2004) .....................................................9

*Keith v. Volpe*,
   86 F.R.D. 565 (C.D. Cal. 1980).........................................................19

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009).......................16

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ...........................................................20

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970) .........................19

*Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*,
   762 F.2d 1093 (D.C. Cir. 1985).........................................................8

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008)....................................................17, 18

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .......................................................................22

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) .........................................................................9

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989).............................................................14

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ..................................................................21, 24

*Sandpiper Village Condo. Ass'n, Inc. v Louisiana-Pacific Corp.*,
   428 F.3d 831 (9th Cir. 2005) ............................................................25

*Silber v. Mabon,*
 18 F.3d 1449 (9th Cir. 1994) .................................................................21

*Six Mexican Workers v. Ariz. Citrus Growers,*
 904 F.2d 1301 (9th Cir. 1990) ...............................................................14

*Torrisi v. Tucson Elec. Power Co.,*
 8 F.3d 1370 (9th Cir. 1993) ...................................................................13

*Van Vranken v. Atlantic Richfield Co.,*
 901 F. Supp. 294 (N.D. Cal. 1995) ........................................................19

*Vizcaino v. Microsoft Corp.,*
 290 F.3d 1043 (9th Cir. 2002) ..........................................14, 15, 17, 19

*Wright v. Linkus Enter., Inc.,*
 259 F.R.D. 468 (E.D. Cal. 2009) .....................................................14, 16

## STATUTES

28 U.S.C. § 1651 ............................................................................................24

28 U.S.C. § 2283 ............................................................................................25

29 U.S.C. § 216(b)..........................................................................................21

## RULES

Fed. R. Civ. P. 23 .................................................................................*Passim*

## SECONDARY AUTHORITIES

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.24
 (4th ed. 2002).......................................................................................8

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.25
 (4th ed. 2002).......................................................................................8

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41
 (4th ed. 2002).......................................................................................7

*Manual for Complex Litigation (Fourth)* § 13.14 (2010).......................8

*Manual for Complex Litigation (Fourth)* § 14.121 (2010)......................................................17

*Manual for Complex Litigation (Fourth)* § 14.122 (2010)...............................................17, 18

*Manual for Complex Litigation (Fourth)* §§ 21.632 – 21.634 (2010)....................................8

## I.  INTRODUCTION AND RELIEF REQUESTED

The parties respectfully move the Court for preliminary approval of the class action settlement agreement reached between Plaintiffs and Defendant.  For the reasons set forth in this memorandum and the supporting documents, the settlement agreement is fair and reasonable and serves the best interests of the class members.  Accordingly, the Parties respectfully request that the Court take the following initial steps in the settlement approval process: (1) grant preliminary approval of the settlement agreement, including the settlement payment to the class and the fees and costs payment to class counsel; (2) provisionally certify the proposed settlement class; (3) appoint as class counsel the law firms of Terrell Marshall & Daudt PLLC and The Scott Law Group, P.S.; (4) approve the proposed notice plan and notice and claim forms; and (5) schedule the final fairness hearing and related dates as proposed by the parties.

In addition, to prevent double recovery and to ensure the fairness and propriety of the settlement reached in this Action, Prince Telecom respectfully requests that the Court enjoin all class members who do not exclude themselves from this settlement from taking the following action: (a) initiating or proceeding with any and all suits, actions, causes of action, claims, or demands in any federal or state court which arise from or are reasonably connected with the factual allegations and claims asserted in this Action, including any and all claims for alleged wage and hour violations under Oregon or federal law for work performed in the State of Oregon from July 1, 2004 through the date of preliminary approval of the settlement of this Action; and (b) opting in to the class in *Stewart v. Prince Telecom, Inc. et al.*, 10 CV 4881, currently pending in the United States District Court Southern District of New York.

By filing this motion in a joint fashion, the parties are not waiving their respective positions in the litigation or conceding any defenses or liability.  Rather, the parties are proceeding in a cooperative manner in order to obtain a fair resolution of this dispute through the Court's approval of the class action settlement.

## II.  STATEMENT OF FACTS

### A.    Factual and Procedural Background

Defendant Prince Telecom, LLC ("Prince Telecom") is in the business of providing cable, internet, and telecommunications installation services at locations around the country. When one of Prince Telecom's customers in Oregon receives a cable subscription order from a homeowner, the customer will hire Prince Telecom to provide the installation service.  Prince Telecom's installation technicians travel throughout Oregon to complete their work.

Plaintiffs allege that since July 1, 2004, Prince Telecom has engaged in a common course of wage and hour violations with respect to non-managerial installation technicians employed in Oregon.  *See generally* Pls.' Complaint.  Plaintiffs allege these violations have taken two primary forms: (1) that from July 1, 2004 to early 2010, Prince Telecom knowingly, and improperly, made deductions from the wages of installation technicians for cell phones, tools, uniforms, and other items; and (2) that from July 1, 2008 to the present, Prince Telecom knowingly failed to pay employees for all hours worked, particularly overtime.  *See id.* Plaintiffs allege Prince Telecom is liable for actual damages, statutory penalties, attorneys' fees and costs.  *See id.*

In the first few months of 2010, Plaintiffs' counsel began investigating alleged wage and hour violations by Prince Telecom in Oregon.  Marshall Decl. ¶ 2.  As part of their investigation, Plaintiffs' counsel interviewed several non-managerial installation technicians who had worked for Prince Telecom in Oregon.  *Id.*  Plaintiffs' counsel also researched and analyzed Oregon wage and hour laws.  *Id.*

On June 28, 2010, Plaintiffs' counsel contacted Prince Telecom to notify it that their clients, Plaintiffs Tyson Koski, Kevin Rickey and John Schlichenmayer, intended to file a class action lawsuit in the United States District Court for the District of Oregon at Portland on behalf of non-managerial installation technicians working for Prince Telecom in Oregon State (the "Action").  *Id.* ¶ 3.  Plaintiffs' counsel sent Prince Telecom a copy of the draft complaint and offered to enter into a tolling agreement in the event Prince Telecom wanted to consider the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 2
CASE NO. CV 10-1307 MO

possibility of an early resolution of the case.  *Id*.  A few days later, the parties finalized and signed a tolling agreement.  *Id*.

On July 12, 2010, Plaintiffs sent a Prince Telecom's counsel a letter requesting that Prince Telecom produce assorted documents related to Prince Telecom's wage and hour practices.  *Id*. ¶ 4.  Less than three weeks later, Prince Telecom produced thousands of pages of responsive materials.  *Id*.  Plaintiffs' counsel reviewed these materials and conducted further research and analysis into the factual background of the case and the legal claims being sought. *Id*.

In October 2010, the parties to the Action engaged in extensive negotiations regarding the claims at issue, including three in-person settlement conferences.  *Id*. ¶ 5.  At all times, the negotiations were adversarial and at arm's length.  *Id*. ¶ 6.  In advance of their meetings, the parties exchanged several detailed letters that addressed the strengths and weaknesses of their respective positions and the relevant facts and law.  *Id*. ¶ 5.  Several offers and counteroffers were made and rejected.  *Id*.  The second settlement conference, which was held on October 6, 2010, lasted approximately ten hours and culminated in an agreement on the major terms of the settlement, including Prince Telecom's payment of $455,000 to resolve the case.  *Id*.  The remaining details of the settlement and the language of the stipulation and notice and claim forms were worked out by the parties during a six hour, face-to-face meeting on October 7, 2010 and in subsequent telephone conferences and email exchanges.  *Id*.  An executed copy of the stipulation of settlement, including proposed notice and claim forms, has been filed with the Court.  Murray Decl., Ex. A.

**B.     The Proposed Settlement**

The terms of the parties' agreement are contained within the Stipulation of Settlement. *See generally* Stipulation of Settlement.  For purposes of preliminary approval, the parties offer the following summary.

The proposed settlement class will include all current and former employees of Prince Telecom who have worked as installation technicians in the State of Oregon from July 1, 2004 through the date of preliminary approval (the "Settlement Class"). *Id.* ¶ 5. For the benefit of the Settlement Class, Prince Telecom will pay $455,000 into a settlement fund. *Id.* ¶ 11. This amount is referred to as the Gross Fund Value ("GFV"). *Id.*

Any Court-approved attorneys' fees, costs, and enhancement awards will be deducted from the GFV. *Id.* ¶ 12. As discussed in more detail below, Plaintiffs' counsel are applying for an award of attorneys' fees in the amount of $113,750, which is 25 percent of the GFV. If approved, this award will compensate and reimburse Plaintiffs' counsel for the work they have already performed in this case as well as the work remaining to be performed in securing Court approval of the settlement, issuing notice, administering the claims process, and distributing payments. *See* Stipulation of Settlement ¶ 14(a). Plaintiffs' counsel are also applying for an award of costs, the amount of which is currently estimated to be approximately $9,000. If approved, this award will reimburse Plaintiffs' counsel for the expenses incurred in litigating this action to date as well as the expenses that will be incurred in issuing notice, administering the claims process, and distributing payment checks to Settlement Class members. *Id.*; *see also* Marshall Decl. ¶ 23; Zuchetto Decl. ¶ 4. Finally, Plaintiffs' counsel are applying for enhancement awards of $1,000 each to the three named Plaintiffs. *See* Stipulation of Settlement ¶ 14(b). If approved, these awards will compensate Plaintiffs for their time and effort and for the risk they undertook in prosecuting the case on behalf of the Settlement Class.

The remainder of the settlement fund, which is defined in the Stipulation of Settlement as the "Net Fund Value" or "NFV," will be distributed to Settlement Class members who have submitted valid and timely claim forms. *See* Stipulation of Settlement ¶¶ 12, 14(c). If the Court approves the attorneys' fees, costs, and enhancement awards as stated above, the NFV will be $329,250. *See id.* Payments from the fund will be split into three equal parts: one-third of the NFV will be used to compensate Settlement Class members for claims of improper

deductions (the "Deduction Payment"); one-third will be used to compensate Settlement Class members for claims of unpaid overtime (the "Overtime Payment"); and one-third will be used to compensate Settlement Class members for claims of penalties and interest (the "Penalties and Interest Payment").  *See id.* ¶ 14(c).

As part of the notice process, class members will learn the minimum estimated amount that they are entitled to recover from the settlement (assuming all class members submit valid and timely claims).  *Id.*  This amount will be determined as follows:

Deduction Payment:  The Deduction Payment allocation will be based on the class member's proportionate share of actual payroll deductions for cell phones, tools, uniforms, etc. from July 1, 2004 to the preliminary approval date (the period applicable to this claim).  *Id.*  To calculate this allocation, the class member's deductions will be divided by the total amount of deductions for all class members and then multiplied by the Deduction Payment.  *Id.*

For example, assuming the class member's actual deductions are $1,800, the total amount of deductions for all class members is $250,000 and the total Deduction Payment is $110,000, the class member will be entitled to receive a payment of $792.00 for his or her deduction claim (1,800 / 250,000 x 110,000).  *Id.*

Overtime Payment:  The Overtime Payment allocation is based on the number of weeks the class member worked from July 1, 2008 to the preliminary approval date (the period applicable to this claim).  *Id.*  Because Prince implemented additional wage and hour compliance efforts in July 2009, class members get double credit for weeks worked from July 1, 2008 to July 1, 2009.  *Id.*  To calculate this allocation, the class member's number of workweeks will be divided by the total number of workweeks for all class members and then multiplied by the Overtime Payment.  *Id.*

For example, if the Overtime Payment equals $110,000 and there are 8,725 work weeks during the July 1, 2008 to July 1, 2009 time period and 7,552 workweeks during the July 1, 2009 through the date of preliminary approval time period, for a total of 16,277 workweeks

during the entire overtime claim time period, the value of each workweek during the July 1, 2008 to July 1, 2009 time period will be $8.80, and the value of each workweek during the July 1, 2009 to the date of preliminary approval time period will be $4.40. *Id*. A class member who worked from July 1, 2008 to June 30, 2010 will be entitled to receive $686.40 for his or her unpaid overtime claim ((52 x 8.80) + (52 x 4.40)). *Id*.

Penalties and Interest Payment: The Penalties and Interest Payment allocation is based on the class member's proportionate share of the sum of the Deduction Payment and Overtime Payment. *Id*. To calculate this allocation, the class member's share will be divided by the total amount of Deduction Payment and Overtime Payment and then multiplied by the Penalties and Interest Payment. *Id*.

For example, assuming the class member's share of the Deduction Payment and Overtime Payment is $1,250, the total amount for both the Deduction Payment and Overtime Payment is $220,000, and the Penalties and Interest Payment is $110,000, then the class member will be entitled to receive $625.00 for his or her penalties and interest claims (1,250 / 220,000 x 110,000). *Id*.

If fewer than all class members submit valid and timely claim forms, the unclaimed portion of the NFV will be distributed proportionately to those class members who are qualified claimants. *Id*. No funds will revert to Prince Telecom. *Id*. ¶¶ 14(c), 16.

In exchange for the benefits allowed under the settlement, Settlement Class members who do not opt out will release every claim, right, cause of action, loss or liability whatsoever that has been or could have been asserted in these actions against Prince Telecom and related entities and individuals regarding Prince Telecom's alleged violation of applicable state and federal wage and hour laws and regulations. *Id*. ¶ 16.

If the Court grants preliminary approval, Plaintiffs' counsel will mail notice forms directly to Settlement Class members that inform the members of the settlement and their rights under it. *Id*. ¶¶ 14(c), 16 & Ex. A. Included with each notice will be a claim form for members

to complete in order to recover money from the settlement fund. *Id.*, Ex. B. Each claim form will be individualized, listing the member's estimated minimum recovery. *Id.* ¶ 16 & Ex. B. The claim form will also provide that by submitting a claim, the Settlement Class member is agreeing to "opt-in" to the FLSA portion of the Action. *Id.*, Ex. B.

Class members will have 30 days from the date of the initial notice mailing to request exclusion from the Settlement Class. *Id.* Class members will have 60 days from the date of the initial mailing to submit their claim forms. *Id.* ¶ 14(c). Finally, class members will have 80 days from the date of preliminary approval to lodge any objections to the settlement.

## III.  AUTHORITY AND ARGUMENT

**A.**    **Settlement and Class Action Approval Process**

As a matter of express public policy, federal courts strongly favor and encourage settlements—particularly in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); *see also* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") § 11.41 (4th ed. 2002) (gathering cases). Individual litigation, the traditional means for handling claims like those at issue here, would unduly tax the court system, would require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Settlement Class members, would be impracticable. The proposed settlement therefore is the best vehicle for Settlement Class members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

> 1.    Preliminary approval of the proposed settlement based on briefing or an informal hearing;

2.      Dissemination of notice of the settlement to all affected class members; and

3.      A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented.

*Manual for Complex Litigation (Fourth)* ("*MCL 4th*") §§ 21.632 – 21.634, at 490–92 (2010). This procedure, which is used by courts in this Circuit and endorsed by class action commentator Professor Herbert Newberg, safeguards Settlement Class members' due process rights and enables the Court to fulfill its role as the guardian of Settlement Class interests. *See Newberg* § 11.24.

The Court's preliminary approval will allow all Settlement Class members to receive notice of the proposed settlement's terms and the date and time of the final settlement approval hearing, at which Settlement Class members may be heard regarding the settlement, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. *See MCL 4th* §§ 13.14 & 21.634, at 235–37, 492.

**B.      The Parties' Settlement Meets the Criteria for Preliminary Approval**

The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the Settlement Class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Newberg* at § 11.25. The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"); *see also City of Seattle*, 955 F.2d at 1276.

Neither formal notice nor a hearing is required at the preliminary approval stage. The Court may grant such relief upon an informal application by the settling parties or even on the basis of information already known, at the Court's discretion. *MCL 4th* § 21.632, at 484–85.

While consideration of the requirements for <u>final</u> approval is unnecessary at this stage, the settlement proposed here not only meets the criteria for preliminary approval but also meets the heightened standard for final approval because it is "fundamentally fair, adequate, and reasonable" for the reasons set forth below. *City of Seattle*, 955 F.2d at 1276. This proves the settlement is "within the range of reasonableness" and should be preliminarily approved.

      1.     <u>The Settlement Is a Product of Serious, Informed and Arm's-Length Negotiations</u>

Courts recognize that arm's-length negotiations conducted by competent counsel after extensive discovery are *prima-facie* evidence of fair settlements. As the United States Supreme Court has held: "One may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining, unhindered by any considerations tugging against the interests of the parties ostensibly represented in the negotiation." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999); *see also In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 567 (W.D. Wash. 2004) (approving settlement "entered into in good faith, following arms-length and non-collusive negotiations").

In this case, the parties participated in extensive negotiations, including three in-person settlement conferences. Marshall Decl. ¶ 6. In advance of those meetings, the parties exchanged several detailed letters that addressed the strengths and weaknesses of their respective positions and the relevant facts and law. *Id*. Several offers and counteroffers were made and rejected. *Id*. The second settlement conference, which was held on October 6, 2010, lasted approximately ten hours and culminated in an agreement on the major terms of the settlement, including Prince Telecom's payment of $455,000 to resolve the case. *Id*. The remaining details of the settlement and the language of the stipulation and notice and claim forms were worked out by the parties during a six hour, face-to-face meeting on October 7 and

in subsequent telephone conferences and email exchanges.  *Id*.  On October 13, the parties

formally adopted the Stipulation of Settlement currently on file with the Court.  *Id*.

The settlement is the result of intensive, arm's-length negotiations between experienced

attorneys who are highly familiar with class action litigation in general and with the legal and

factual issues of this case in particular.  Marshall Decl. ¶¶ 11−17; Zuchetto Decl. ¶ 2.

Plaintiffs' counsel are particularly experienced in the litigation, certification, trial, and

settlement of wage and hour cases similar to this case.  *See generally id*.  In negotiating this

settlement, Plaintiffs' counsel had the benefit of many years of prior experience working on

similar cases.  *See generally id*.  Plaintiffs' counsel also had the benefit of knowing a

substantial amount of information about Prince Telecom's wage and hour practices as a result

of the information produced by Prince Telecom in the Action.  *Id*.

Furthermore, the three class representatives worked with Plaintiffs' counsel before,

during, and after the settlement negotiations to help counsel fully understand and respond to

factual issues and to ensure fairness of any settlement.  Marshall Decl. ¶ 12; Zuchetto Decl. ¶ 3.

Finally, as discussed in Section II.A above, counsel spent a considerable amount of time

engaging in informal discovery, reviewing documents, interviewing witnesses, and analyzing

legal issues related to the lawsuit's claims.  The named Plaintiffs and Plaintiffs' counsel

support the settlement as fair, reasonable, adequate and in the best interests of the Settlement

Class.  Marshall Decl. ¶ 12; Zuchetto Decl. ¶ 2.

2.   The Settlement Provides Substantial Relief to the Settlement Class
     and Treats All Settlement Class Members Fairly

The proposed settlement provides substantial monetary relief to the Settlement Class.

For the benefit of the named Plaintiffs and Settlement Class members, Prince Telecom has

agreed to pay $455,000 into a settlement fund.  Stipulation of Settlement ¶ 11.  This fund will

cover payments to the Settlement Class, notice and administration costs, reasonable attorneys'

fees and litigation expenses and enhancement awards, as approved by this Court.  *Id*.

The funds distributed to the Settlement Class will be allocated in a manner that is fair and reasonable, and no segment of the Settlement Class is excluded from relief or consigned to inferior benefits.  *See id.* ¶ 14(c); *see also* Marshall Decl. ¶ 8.  Each class member's share will be based on the member's amount of actual wage deductions for cell phones, tools, uniforms, etc. and the length of time the member worked as a non-managerial installation technician for Prince Telecom in Oregon during the relevant periods.  Marshall Decl. ¶ 8.  For example, an employee who had $1,000 in deductions will recover twice as much as an employee who had $500 in deductions.  *Id.*  Likewise, an employee who worked 12 months during the period from July 1, 2008 to July 1, 2009 will recover twice as much as an employee who worked 6 months during that same period.  *Id.*

By way of example, the estimated minimum recovery for the named Plaintiffs is as follows:

| NAME | MINIMUM DEDUCTION PAYMENT | MINIMUM OVERTIME PAYMENT | MINIMUM PENALTIES AND INTEREST PAYMENT | TOTAL MINIMUM PAYMENT |
|---|---|---|---|---|
| Koski | $658.90 | $573.85 | $616.56 | **$1,849.31** |
| Rickey | $767.30 | $547.60 | $657.64 | **$1,972.54** |
| Schlichenmayer | $1,265.09 | $518.29 | $891.96 | **$2,675.35** |

Marshall Decl. ¶ 9.

3.  The Settlement Is Fair and Reasonable in Light of the Alleged Claims and Defenses

Entering into mediation, Plaintiffs and Plaintiffs' counsel were confident in the strength of their case but also pragmatic in their awareness of the risks inherent to litigation and the various defenses available to Prince Telecom.  The reality that class members could end up recovering only a fraction of the settlement benefits or even losing at trial was significant

enough to convince Plaintiffs and Plaintiffs' counsel that the settlement reached with Prince Telecom outweighs the gamble of continued litigation.

Throughout the negotiation process, for example, Prince Telecom has maintained that Plaintiffs overstated the time it takes installation technicians to load and unload their equipment, maintain their vehicles, complete required paper work, and drive to and from their jobs. Marshall Decl. ¶ 6. Likewise, Prince Telecom denied any liability for deductions related to cell phones, tools, uniforms and similar items. *Id.* If Prince Telecom were able to convince a jury that Plaintiffs' allegations were overstated or unfounded, Prince Telecom could effectively reduce the recoverable damages or eliminate them altogether.

Prince Telecom's efforts to address and prevent the violations alleged in this case would also make it more difficult to prove the class claims. In July 2009, Prince Telecom instituted significant changes to its wage and hour/overtime pay compliance program so as to ensure that employees are compensated for all time worked, including: (1) conducting extensive training and testing of all employees, supervisors and managers regarding the necessity of accurately recording all time worked, including meal and rest breaks; (2) setting up a telephone and internet-based Ethics Hotline for employees to report any issues with respect to their employment, including any wage and hours issues and supplying employees with wallet cards that contained the Ethics Hotline details; (3) placing posters with the Ethics Hotline details in every field locations for employees; (4) instructing employees verbally and in writing to come forward with any concerns regarding wage and hour issues and supplying employees with such written instructions each week; (5) reminding employees of the importance of accurately recording all time worked in weekly meetings; and (6) eliminating all deductions for employees. Kuhn Decl. ¶ 4. Prince Telecom maintains that the changes that have been instituted constitute a significant impediment to the alleged overtime claims of Settlement Class members for the period of July 1, 2009 to present. *Id.* Plaintiffs agree that the allocation of settlement payments is appropriate in light of these assertions. *Id.*

Another risk Plaintiffs faced going forward is that this Court would decline to certify this case as a class action. Prince Telecom has strenuously denied that class certification is appropriate in this case. *See* Stipulation of Settlement ¶ 7. If Prince Telecom were able to present convincing facts to support its position, the Court could have refused to certify the class, leaving only the named Plaintiffs to pursue their claims.

Finally, there is a substantial risk of losing inherent in any jury trial. Even if Plaintiffs did prevail, any recovery could be delayed for years by an appeal. The settlement obtained provides substantial monetary relief to Settlement Class members without further delay.

    4.    <u>The Settlement Class Representative Enhancement Awards Are Reasonable</u>

Subject to Court approval, the settlement agreement provides that each of the three named Plaintiffs may be paid reasonable incentive compensation of $1,000 out of the GFV. Stipulation of Settlement ¶ 14(b). This compensation to the named Plaintiffs is in recognition of their substantial service to and efforts on behalf of the proposed Settlement Class. *See id*. All of them greatly assisted Plaintiffs' counsel in investigating the claims, preparing the complaint, contacting additional witnesses, and understanding the factual background of the lawsuit. Marshall Decl. ¶ 26. Each was prepared to participate in written discovery, was prepared to testify at deposition or trial, and was consulted during settlement negotiations. *Id*. This compensation is in addition to the relief to which the named Plaintiffs are entitled under the terms of the settlement. Stipulation of Settlement ¶ 14(b).

    5.    <u>The Fees and Costs Payment Is Fair and Reasonable</u>

Pursuant to the settlement agreement, Plaintiffs' counsel seek an award of $113,750 for their attorneys' fees. This amounts to 25 percent of the settlement fund, also referred to as the "common fund." Prince Telecom does not contest Plaintiffs' counsel's application. Where counsel to a class action seek fees from the common fund, courts use one of two methods to determine whether the request is reasonable: the "percentage of the fund" method or the "lodestar" method. Plaintiffs' counsel's request for fees is reasonable under either analysis.

a.    *The Percentage of the Fund Analysis Supports Counsel's Fee Request*

The benchmark for an attorneys' fee award in the Ninth Circuit is 25 percent of the

common fund.  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)

(citing *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990);

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).  When examining

fees, "district courts in the Ninth Circuit 'should be guided by the fundamental principle that

fee awards out of common funds be *reasonable under the circumstances.*'"  *Wright v. Linkus*

*Enter., Inc.*, 259 F.R.D. 468, 476 (E.D. Cal. 2009) (citing *Chem. Bank v. City of Seattle (In re*

*Wash. Pub. Power Supply Sys. Sec Litig.)*, 19 F.3d 1291, 1296 (9th Cir. 1994) (internal

quotations omitted and emphasis in original)).  "In looking at the circumstances of each case,

relevant factors may include early settlement, achievement of an excellent result, risk, and a

showing of standard fees for similar litigation."  *Wright*, 259 F.R.D. at 476−77 (citing *Vizcaino*

*v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)).

All four factors demonstrate that Plaintiffs' counsel's request for $113,750 in attorneys'

fees (25 percent of the common fund) is reasonable under the circumstances.  First, Plaintiffs'

counsel have worked hard to achieve an early resolution of this case.  *See generally* Marshall

Decl.; Zuchetto Decl.  Plaintiffs' counsel obtained substantial informal discovery from Prince

Telecom, including information including wage and hour policies, payroll records, and

personnel files.  *See id.*  Plaintiffs' counsel then spent many hours analyzing the documents

Prince Telecom provided and calculating potential damages.  *See id.*  In addition, Plaintiffs'

counsel spent substantial time interviewing potential class members and evaluating their

claims.  *See id.*  By working hard to accomplish these tasks in a short timeframe, counsel were

able to efficiently negotiate a favorable and timely result for the Settlement Class members.

Of course, because of the early settlement, Plaintiffs' counsel have spent fewer hours

prosecuting this action than they would have had the case proceeded to trial.  However, the

common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit

without contributing to its cost are unjustly enriched at the successful litigant's expense." *See Wright*, 259 F.R.D. at 477 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, (1980)). Therefore, "awarding Plaintiffs' attorneys a percentage of the total settlement amount w[ill] adequately compensate Plaintiffs' counsel for the proposed settlement at an early stage in the litigation." *Id.* Moreover, awarding Plaintiffs' counsel a reasonable percentage of the common fund promotes the public policy of encouraging timely settlements. *Vizcaino*, 290 F.3d at 1051 (noting "it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief"); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (approving fee awards that amount to 30 percent of the common fund in part because such a benchmark "will encourage plaintiffs' counsel to move for early settlement"). Thus, the first factor weighs in favor of finding that the requested fee award is reasonable.

Second, Plaintiffs' counsel have achieved an excellent result for the Settlement Class. The settlement agreement creates a total award of $455,000. After deducting the requested attorneys' fees, litigation expenses and enhancement awards, the net fund to be split among class members will be approximately $329,250. Though they signed written authorization forms allowing Prince Telecom to deduct from their wages for cell phones, tools, uniforms, etc., class members will be entitled to receive a payment that, at a <u>minimum</u>, reimburses them for more than 42 percent of those deductions. In addition, class members who worked from July 1, 2008 to July 1, 2009 will be entitled to a <u>minimum</u> payment of $444.00, which is the equivalent of one hour of additional overtime pay for every week of work. Class members who worked from July 1, 2009 to October 15, 2010 will be entitled to a <u>minimum</u> payment of $287.00, which is the equivalent of 30 minutes of additional overtime pay for every week of work. For example, an employee who worked from July 1, 2008 to October 15, 2010 and had $1,000 in deductions will be entitled to a <u>minimum</u> payment of $1,156.00. Given the excellent benefits obtained for the Settlement Class, the requested fee is reasonable.

Third, Plaintiffs' counsel have devoted substantial resources to the prosecution of this case with no guarantee that counsel would be compensated for their time or reimbursed for their expenses.  To the contrary, payment of counsel's fees and expenses has always been contingent on a successful recovery of damages.  Marshall Decl. ¶ 27.  Thus, there was a substantial risk of nonpayment.  Moreover, the Court has not yet certified the case as a class action and, prior to settlement, Prince Telecom has steadfastly denied that class certification was appropriate.[1]  Prince Telecom also denied liability for the claims Plaintiffs have asserted. Even if Plaintiffs ultimately prevailed at trial, a result that was not guaranteed, they likely faced a long and costly appeals process.

Fourth, Plaintiffs' request is in line with fees requested in similar actions.  Plaintiffs' counsel have requested an award equal to 25 percent of the common fund, which is the benchmark in the Ninth Circuit.  In addition, the requested fee is consistent with fees awarded in recent Ninth Circuit cases involving similar wage and hour claims.  *See Wright*, 259 F.R.D. at 476 (granting class counsel's request for $625,000 in attorneys' fees and costs which amounted to 25 percent of the $2,500,000 common fund); *Barcia v. Contain-A-Way,* No. 07 cv 938-IEG-JMA, 2009 WL 587844, at *6 (S.D. Cal. March 6, 2009) (same); *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *12–13 (N.D. Cal. April 3, 2009) (approving attorneys' fee award that amounted to approximately 25 percent of the common fund); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (awarding fees amounting to 30 percent of the common fund); *Glass v. UBS Fin. Servs., Inc.*, 331 Fed. Appx. 452, 2009 WL 1360920, at *2 (9th Cir. May 14, 2009) (affirming trial court's decision to award class counsel fees amounting to 25 percent of the common fund).

---

[1] For settlement purposes only, Prince Telecom has conditionally stipulated to class certification.  *See* Stipulation of Settlement, ¶ 6.

In short, Counsel's fee request is reasonable under the "percentage of the fund" method. While this approach provides an independent ground for granting the fee request, a "cross-check" under the lodestar method also demonstrates that Counsel's request is reasonable. *See MCL 4th* § 14.121, at 255−61 (noting "[a] number of courts favor the lodestar as a backup or cross-check on the percentage method when the fees might be excessive").

b.     *Lodestar Analysis Supports Counsel's Fee Request*

Under the lodestar method, the district court first calculates counsel's lodestar by multiplying the reasonable hours expended by a reasonable hourly rate. *See Vizcaino*, 290 F.3d at 1050−51. The court may then enhance the lodestar with a multiplier, if necessary, to arrive at a reasonable fee. *See id.* at 1052−54 (approving multiplier of 3.65 and citing a survey of class settlements from 1996-2001 indicating that most multipliers range from 1.0 to 4.0); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 n.2 (9th Cir. 1994) (citations omitted). Upward adjustments may be appropriate based on the results obtained, the quality of representation, the complexity and novelty of the issues presented, the risk of nonpayment, and any delay in payment. *MCL 4th* § 14.122, at 263.

Since they first began investigating the allegations of wage and hour violations in Oregon, Plaintiffs' counsel have incurred more than $79,000 in fees and expended more than $2,300 in litigation expenses related to the prosecution of this Action. Marshall Decl. ¶¶ 19−23; Zuchetto Decl. ¶¶ 7−9. Counsel estimate they will incur an additional $23,000 in fees to prosecute the case through final settlement approval. *See id.* By the time it is completed, Plaintiffs' counsel will have devoted more than 370 hours to the investigation, development, litigation and resolution of this complex case. *See id.* This includes time spent investigating the claims of the Settlement Class members, conducting discovery, researching and analyzing legal issues, calculating damages, engaging in settlement negotiations, obtaining settlement approval, issuing notice, administering the claims process, and distributing payments to class members. *See id.*

Throughout this case, Plaintiffs' counsel prosecuted the claims of the employees efficiently and effectively.  Knowing it was possible they would never be paid for their work, counsel had no incentive to act in a manner that was anything but economical.  *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[L]awyers are not likely to spend unnecessary time on contingency cases in the hope of inflating their fees.  The payoff is too uncertain, as to both the result and the amount of the fee.").  That said, counsel took their charge seriously and endeavored to represent the interests of the class members to the greatest extent possible.

The lodestar calculations of Plaintiffs' counsel are based on reasonable hourly rates.  Plaintiffs' counsel set their rates for attorneys and staff members based on a variety of factors, including among others: the experience, skill and sophistication required for the types of legal services typically performed; the rates customarily charged in the markets where legal services are typically performed; and the experience, reputation and ability of the attorneys and staff members.  Marshall Decl. ¶ 20; Zuchetto Decl. ¶ 8.  The rates charged for attorneys and staff members working on this matter range from $50.00 to $350.00, with the majority of the work performed by Mr. Marshall at an hourly rate of $325.00 and Mr. Zuchetto at an hourly rate of $290.00.  *See* Marshall Decl. ¶ 19; Zuchetto Decl. ¶ 7.  These are the rates that the firms normally charge to paying clients.  *See id*.  In light of the detailed breakdown provided by counsel in their respective declarations, and the arguments offered above, Plaintiffs' counsel submit that their lodestar calculations are based on reasonable rates.

The fees award requested by Plaintiffs' counsel reflects a multiplier of 1.11 on their total lodestar.  Such a multiplier is reasonable given the outstanding result Plaintiffs' counsel have achieved, the risks involved in taking the legal claims to trial, and the complexity of the case.  *See MCL 4th* § 14.122, at 261.  As noted above, Plaintiffs have negotiated an excellent settlement for the Settlement Class.  Further, while Plaintiffs' counsel were confident in their ability to succeed at class certification and at trial, success was by no means guaranteed,

especially considering Prince Telecom's compliance efforts and opposition to the claims and the complexity of the issues involved. Because Plaintiffs' counsel agreed to prosecute this case on contingency with no guarantee of ever being paid, they faced substantial risk should they proceed to trial.

Furthermore, Plaintiffs' requested multiplier falls well-within the range of multipliers approved in a common fund case. *See Vizcaino*, 290 F.3d at 1051, n.6 (approving multiplier of 3.65 and noting awards up to 19.6, with a majority in the 1.5 to 3.0 range); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (noting multipliers in the 3.0 to 4.0 range "are common in lodestar awards for lengthy and complex litigation") (citing *Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 539 (S.D. Fla. 1988) (awarding multiplier of 3.0 and commenting, "[t]he range of lodestar multiples in large and complicated class actions runs from a low of 2.26 to a high of 4.5")); *Keith v. Volpe*, 86 F.R.D. 565, 575–77 (C.D. Cal. 1980) (awarding multiplier of 3.5)). In light of this authority, Plaintiffs' request for a multiplier of 1.11 is appropriate and should be granted.

The litigation expenses Plaintiffs' counsel incurred in this case include the following: (1) copying, mailing, and messenger expenses; (2) computer research expenses; and (3) travel expenses. *See* Marshall Decl. ¶ 23; Zuchetto Decl. ¶ 7−9. These out-of-pocket costs were necessary to secure the resolution of this litigation. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-1178 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in a class action litigation). "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970)).

All in all, Plaintiffs' counsel worked hard to bring this case to a successful resolution in the face of a staunch defense, and the fees and costs payment provided for in the settlement is fair and reasonable.

**B.      Provisional Certification of the Settlement Class Is Appropriate**

This Court has not yet certified this case as a class action.  For settlement purposes, Plaintiffs respectfully request that the Court provisionally certify the following class: all current and former employees of Prince Telecom who have worked as installation technicians in the State of Oregon from July 1, 2004 through the date of preliminary approval.  *See* Stipulation of Settlement ¶ 5.  Provisional certification will allow the Settlement Class to receive notice of the settlement and its terms, including the right to submit a claim and recover money if the settlement is approved, the right to be heard on the settlement's fairness, the right to opt out of the settlement, and the date, time and place of the formal settlement hearing.  *See id.* ¶ 19, Exs. A–B.  For settlement purposes, Prince Telecom has conditionally stipulated that Plaintiffs satisfy the class certification requirements set forth in Rule 23.  *Id.* ¶ 6.

> 1.      The Requirements of Rule 23 Are Satisfied

Certification of the Settlement Class for settlement purposes is appropriate under Rule 23(a) and (b)(3).  The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 760 current and former employees spread throughout the state of Oregon, and joinder of all such employees is impracticable.  *See* Fed. R. Civ. P. 23(a)(1). The commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class, questions that center on Prince Telecom's employment practices.  *See* Fed. R. Civ. P. 23(a)(2); *see also Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).  The typicality requirement is satisfied because Plaintiffs' claims arise from the same course of conduct that gives rise to the claims of other Settlement Class members.  *See* Fed. R. Civ. P. 23(a)(3).  The adequacy of representation requirement is satisfied because Plaintiffs'

interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See* Fed. R. Civ. P. 23(a)(4).

The predominance requirement of Rule 23(b)(3) is satisfied because common questions present a significant aspect of the case and can be resolved for all Settlement Class members in a single adjudication. *See* Fed. R. Civ. P. 23(b)(3); *see also Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of more than 760 claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, certification of the Settlement Class for purposes of settlement is appropriate.

      2.     <u>Certification of the FLSA Claims Is Appropriate</u>

In addition to their state-law claims, Plaintiffs assert claims under the FLSA. This act expressly authorizes employees to sue for unpaid overtime wages not only on their own behalf, but also as a collective action on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). Unlike a class action, in which employees are members of the class unless they affirmatively opt out, each individual member (or "party plaintiff") of an FLSA collective action must affirmatively opt in to the case by filing a written consent to join the suit.

Here, Plaintiffs satisfy the FLSA requirements because Plaintiffs' claims arise from the same course of conduct that gives rise to the claims of other Settlement Class members. Thus, the named Plaintiffs and Settlement Class members are similarly situated. Further, the Settlement Agreement's notice program satisfies the FLSA's "opt in" requirements because the claim form clearly provides that by submitting a claim, the Settlement Class member has agreed to "opt in" to the FLSA action. *See* Stipulation of Settlement, Ex. B.

### C.      The Proposed Notice Program Is Constitutionally Sound

To protect their rights, the Court must provide class members with the best notice practicable regarding the proposed settlement.  Fed. R. Civ. P. 23(c)(2).[2]  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Settlement Class members can be reasonably identified through Prince Telecom's own records, which contain information on all hourly employees within the statutory time period, including each person's last known phone number, address, and Social Security Number. Marshall Decl. ¶ 25.  Plaintiffs propose sending notice in the form attached as Exhibit A to the Stipulation of Settlement directly via First Class mail to all current and former employees of Prince Telecom who have worked as installation technicians in Oregon from July 1, 2004 through the date of preliminary approval.  *See* Stipulation of Settlement ¶ 14(c).  If any notices are returned as undeliverable, Plaintiffs' counsel will make reasonable attempts to determine a current mailing address and will promptly re-mail the notice to any new addresses disclosed through such efforts.  *Id*.  This approach will ensure that direct notice reaches as many Settlement Class members as possible.

The language of the proposed notice and accompanying claim form is plain and easily understood, providing neutral and objective information about the nature of the settlement.  The notice and claim form include the definition of the Settlement Class, a statement of each Settlement Class member's rights (including the right to opt-out of the Settlement Class or object to the settlement), detailed explanations of how to submit a claim and share in the settlement funds, a statement of the consequences of remaining in the Settlement Class, an explanation of how Settlement Class members can exclude themselves from the Settlement

---

[2] *See also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best notice practicable" under the circumstances with description of the litigation and explanation of opt-out rights satisfies due process); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (holding "[w]e do not believe that *Shutts* changes the traditional standard for class notice from 'best practicable' to 'actually received' notice").

Class or object to the settlement, and methods for contacting Plaintiffs' counsel and obtaining more information. *See* Stipulation of Settlement, Exs. A−B.

Plaintiffs submit that the notice program outlined in the settlement agreement is the best practicable notice under the circumstances of this case, and will be highly effective.

**D.     The Scheduling of a Final Fairness Hearing Is Appropriate**

The last step in the settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its final evaluation.  Proponents of the settlement may explain the terms and conditions of the settlement and offer argument in support of final approval.  In addition, Settlement Class members, or their counsel, may be heard in support of or in opposition to the settlement agreement.  After this hearing, the Court will determine whether the settlement should be finally approved, and whether to enter a final order and judgment under Rule 23(e).

Plaintiffs respectfully request that the Court adopt the following schedule for the final approval process:

| DATE | EVENT |
|---|---|
| Within 15 days of preliminary approval  or January 15, 2011, whichever is later | Deadline for Prince Telecom to provide Plaintiffs' counsel with class list and data necessary to calculate estimated minimum payments |
| Within 15 days of receiving class list | Deadline for Plaintiffs' counsel to mail notice and claim forms to class members |
| Within 30 days of initial mailing of notice | Deadline for class members to exclude themselves from the Action |
| Within 60 days of initial mailing of notice | Deadline for class members to submit claim forms |
| March 11, 2011 | Deadline for parties to submit any papers in support of final approval |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 23
CASE NO. CV 10-1307 MO

| March 21, 2011 | Deadline for class members to object to settlement |
| March 31, 2011 or as soon thereafter as the Court's schedule permits | Final approval hearing |

**E.      The Court Should Issue an Injunction Prohibiting Duplicative Actions**

In connection with granting preliminary approval of the Settlement, Prince Telecom respectfully requests that the Court issue an injunction pursuant to its authority under the All Writs Act, 28 U.S.C. § 1651, prohibiting all class members who do not exclude themselves from this settlement from taking the following action: (a) initiating or proceeding with any and all suits, actions, causes of action, claims, or demands in any federal or state court which arise from or are reasonably connected with the factual allegations and claims asserted in this Action, including any and all claims for alleged wage and hour violations under Oregon or federal law for work performed in the State of Oregon from July 1, 2004 through the date of preliminary approval of the settlement of this Action; and (b) opting in to the class in *Stewart v. Prince Telecom, Inc. et al.*, 10 CV 4881, currently pending in the United States District Court Southern District of New York.[3]  Such an injunction is necessary to ensure the finality of the Settlement and to prevent impairment of the Court's "flexibility and authority to approve settlements."  *In re Baldwin-United Corp.,* 770 F.2d 328, 337 (2d Cir. 1985) (quotations omitted).  *See Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1025 (9th Cir. 1998) (holding federal court had power to issue an injunction under the All Writs Act, which empowered federal courts "to enjoin state proceedings that interfere, derogate, or conflict with federal judgments, orders, or settlements").

The All Writs Act permits federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651.  This provision has been interpreted to

---

[3] Upon preliminary approval of the settlement, the Court will have established personal jurisdiction over the Settlement Class members by approving the dissemination of notice and establishing an opt-out period, thus ensuring that an injunction will comport with the requirements of due process.  *See Carlough v. Amchem Products, Inc.,* 10 F.3d 189, 198-99 (3rd Cir. 1993) (citing *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985)).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 24
CASE NO. CV 10-1307 MO

allow federal courts to issue injunctions to "preserv[e] the federal court's jurisdiction or authority over an ongoing matter." *Baldwin-United,* 770 F.2d at 335; *Hanlon*, 150 F.3d at 1025. It is well established that the All Writs Act empowers federal courts to enjoin proceedings in other jurisdictions that may disrupt the settlement of the cases before them.[4] *See, e.g.*, *Carlough v. Amchem Products, Inc.,* 10 F.3d 189, 198-99 (3rd Cir. 1993) ("impending and finalized settlements in federal actions [] justify[] 'necessary in aid of jurisdiction' injunctions of duplicative state actions"); *Hanlon,* 150 F.3d at 1024-25 (affirming approval of settlement; district court order granting preliminary approval of settlement included a provision enjoining members of the settlement class from initiating or proceeding in any court asserting any of the claims described in the settlement agreement). *See also Sandpiper Village Condo. Ass'n, Inc. v Louisiana-Pacific Corp.*, 428 F.3d 831 (9th Cir. 2005) (stating that *Hanlon* "clearly recognized that a competing state class action covering a portion of the federal class posed a significant danger to the delicate and transitory process of approving a settlement agreement, and thereby threatened the district court's ability to resolve the litigation.").

Here, the Parties have negotiated a settlement pursuant to the terms of the Stipulation of Settlement, and they intend, for all class members who do not exclude themselves from the Action, that this settlement will conclude all litigation under federal and state law that arises from or is reasonably related to the factual allegations and claims asserted in this action, including the payment of wages for work performed in the State of Oregon from July 1, 2004 through the date of preliminary approval of the settlement. Initiation of duplicative lawsuits would disrupt the finality of the settlement and negate the Court's efforts to assist the parties in

_____

[4] This type of injunction does not run afoul of the Anti-Injunction Act, 28 U.S.C. § 2283. That statute prohibits federal courts from granting injunctions to stay state court proceedings "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Id.* The Anti-Injunction Act only applies to stays of ongoing state proceedings; injunctions that prohibit the initiation of state actions are permissible. *See Dombrowski v. Pfister,* 380 U.S. 479, 485 (1965) ("[The Anti-Injunction Act] and its predecessors do not preclude injunctions against the institution of state court proceedings, but only bar stays of suits already instituted."). In addition, federal courts may enjoin specific ongoing proceedings in other jurisdictions where necessary to protect a settlement, because such actions fall within the Anti-Injunction Act's exception for injunctions necessary to protect the court's jurisdiction. *See Hanlon,* 150 F.3d at 1025; *Baldwin-United,* 770 F.2d at 335.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 25
CASE NO. CV 10-1307 MO

resolving the case before this Court.  This concern is valid, given that a nationwide opt-in class action that asserts claims regarding payment of wages on behalf of Prince non-managerial installation technicians, *Stewart v. Prince Telecom, Inc. et al.*, 10 CV 4881, is currently pending in the United States District Court Southern District of New York.  The *Stewart* case is in the preliminary stages, and counsel representing the plaintiffs in that case are currently searching for potential opt-ins and have yet to seek conditional class certification.

Because the *Stewart* action alleges claims for payment of wages under the Fair Labor Standards Act, these claims partially overlap with the claims alleged in this Action.  To avoid interference with the Court's jurisdiction over the settlement of this Action, Prince Telecom respectfully requests that the Court enjoin members of the Settlement Class in this Action from opting in to the *Stewart* class action.  To date, no current or former non-managerial installation technician who worked in the State of Oregon has opted-in to the class in the *Stewart* class action.  Under these circumstances, an injunction through the date of dismissal of this Action, as defined in the Stipulation of Settlement, is clearly warranted.

## IV.  CONCLUSION

For all of the foregoing reasons, the Parties respectfully request that the Court: (1) grant preliminary approval of the settlement agreement, including the settlement payment to the Settlement Class and the fees and costs payment to Plaintiffs' counsel; (2) provisionally certify the proposed Settlement Class; (3) appoint as Settlement Class counsel the law firms of Terrell Marshall & Daudt PLLC and The Scott Law Group, P.S.; (4) approve the proposed notice plan and the notice and claim form; and (5) schedule the final fairness hearing and related dates as proposed by the parties.  In addition, Prince Telecom respectfully requests that the Court enjoin all class members who do not exclude themselves from this settlement from taking the following action: (a) initiating or proceeding with any and all suits, actions, causes of action, claims, or demands in any federal or state court which arise from or are reasonably connected with the factual allegations and claims asserted in this Action, including any and all claims for

alleged wage and hour violations under Oregon or federal law for work performed in the State of Oregon from July 1, 2004 through the date of preliminary approval of the settlement of this Action; and (b) opting in to the class in *Stewart v. Prince Telecom, Inc. et al.*, 10 CV 4881, currently pending in the United States District Court Southern District of New York.

DATED this 13th day of December, 2010.

TERRELL MARSHALL & DAUDT PLLC


By: /s/Toby J. Marshall, *Admitted Pro Hac Vice*
      Jennifer R. Murray, OSB #100389
      Email: jmurray@tmdlegal.com
      Toby J. Marshall, *Admitted Pro Hac Vice*
      Email: tmarshall@tmdlegal.com
      3600 Fremont Avenue North
      Seattle, Washington  98103
      Telephone: (206) 816-6603
      Facsimile: (206) 350-3528

      Michael J. Estok, OSB #090748
      Email: mestok@lindsayhart.com
      LINDSAY, HART, NEIL & WEIGLER, LLP
      1300 SW Fifth Avenue, Suite 3400
      Portland, Oregon  97201-5640
      Telephone: (503) 226-7677
      Facsimile: (503) 226-7697

      Matthew J. Zuchetto, *Admitted Pro Hac Vice*
      Email: matthewzuchetto@mac.com
      THE SCOTT LAW GROUP, PS
      926 West Sprague Avenue, Suite 680
      Spokane, Washington  99201
      Telephone: (509) 455-3966
      Facsimile: (509) 455-3906

      *Attorneys for Plaintiffs*

ROBERTS KAPLAN LLP


By: /s/Carter Mann, #OSB 960899
     Carter Mann, OSB #960899
     Email:  cmann@robertskaplan.com
     601 SW 2nd Avenue, Suite 1800
     Portland, Oregon 97204
     Telephone:  (503) 221-2219
     Facsimile:  (800) 601-8869

     Stellman Keehnel, *Admitted Pro Hac Vice*
     Email:  stellman.keehnel@dlapiper.com
     DLA PIPER
     701 Fifth Avenue, Suite 7000
     Seattle, Washington  98104-7044
     Telephone:  (206) 839-4888
     Facsimile:  (206) 494-1790

     Eric S. Beane, *Admitted Pro Hac Vice*
     Email:  eric.beane@dlapiper.com
     DLA PIPER
     1999 Avenue of the Stars, Suite 400
     Los Angeles, California   90067-6023
     Telephone:  (310) 595-3005
     Facsimile:  (310) 595-3305

     *Attorneys for Defendant*

CERTIFICATE OF SERVICE

I, Toby J. Marshall, hereby certify that on December 13, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Carter Mann
Email: cmann@robertskaplan.com
ROBERTS KAPLAN LLP
601 SW 2nd Avenue, Suite 1800
Portland, Oregon 97204
Telephone: (503) 221-2219
Facsimile: (800) 601-8869

Stellman Keehnel, *Admitted Pro Hac Vice*
Email: stellman.keehnel@dlapiper.com
DLA Piper
701 Fifth Avenue, Suite 7000
Seattle, Washington 98104-7044
Telephone: (206) 839-4888
Facsimile: (206) 494-1790

Eric S. Beane, *Admitted Pro Hac Vice*
Email: eric.beane@dlapiper.com
DLA PIPER
1999 Avenue of the Stars, Suite 400
Los Angeles, California 90067-6023
Telephone: (310) 595-3005
Facsimile: (310) 595-3305

*Attorneys for Defendant Prince Telcom, LLC*

DATED this 13th day of December, 2010.

TERRELL MARSHALL & DAUDT PLLC


By: /s/Toby J. Marshall, *Admitted Pro Hac Vice*
Toby J. Marshall, *Admitted Pro Hac Vice*
Email: tmarshall@tmdlegal.com
3600 Fremont Avenue North
Seattle, Washington 98103
Telephone: (206) 816-6603

*Attorney for Plaintiffs*