Toby J. Marshall, *Admitted Pro Hac Vice*
Email: tmarshall@tmdwlaw.com
Jennifer R. Murray, OSB #100389
Email: jmurray@tmdwlaw.com
TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
AT PORTLAND

| | |
|---|---|
| TYSON KOSKI, KEVIN RICKEY and JOHN SCHLICHENMAYER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PRINCE TELECOM, LLC, a Delaware limited liability company, f/k/a PRINCE TELECOM, INC.,<br><br>Defendant. | NO. CV 10-1307 MO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br><u>CLASS ACTION ALLEGATION</u> |

## TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION AND RELIEF REQUESTED ........................................................1

II.   AUTHORITY AND ARGUMENT ...........................................................................1

      A.    The Settlement Is the Result of Informed, Arm's-Length Negotiations ..............1

      B.    The Class Members Have Received the Best Notice Practicable .........................3

      C.    Class Members Have Not Objected to the Settlement .........................................4

      D.    No Class Members Have Chosen to Opt Out of the Settlement...........................5

      E.    Hundreds of Settlement Class Members Have Filed Claims ...............................5

      F.    The Settlement Agreement Provides Substantial Benefits to the Class ...............5

      G.    The Class Representative Service Awards Are Fair and Reasonable ..................7

      H.    The Payment of Attorneys' Fees and Costs Is Fair and Reasonable...................9

            1.    The Percentage of the Fund Analysis Supports Counsel's Fee
                  Request .....................................................................................................9

            2.    Lodestar Analysis Supports Counsel's Fee Request  ...........................12

III.  CONCLUSION .........................................................................................................15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Barcia v. Contain-A-Way,*
      No. 07 cv 938-IEG-JMA, 2009 WL 587844 (S.D. Cal. March 6, 2009) ................11, 12

*Bogosian v. Gulf Oil Corp.,*
      621 F. Supp. 27 (E.D. Pa. 1985) .................................................................................8, 9

*Carroll v. Blue Cross & Blue Shield,*
      157 F.R.D. 142 (D. Mass. 1994), *aff'd* 34 F.3d 1065 (1st Cir. 1994) .............................8

*Class Plaintiffs v. City of Seattle,*
      955 F.2d 1268 (9th Cir. 1992) .................................................................................1, 15

*Glass v. UBS Fin. Servs., Inc.,*
      331 Fed. Appx. 452, 2009 WL 1360920 (9th Cir. May 14, 2009)................................12

*Hopson v. Hanesbrands Inc.,*
      No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. April 3, 2009)......................11, 12

*In re Activision Sec. Litig.,*
      723 F. Supp. 1373 (N.D. Cal. 1989)..........................................................................10

*In re Immune Response Sec. Litig.,*
      497 F. Supp. 2d 1166 (S.D. Cal. 2007) .....................................................................14

*In re Media Vision Tech. Sec. Litig.,*
      913 F. Supp. 1362 (N.D. Cal. 1996)....................................................................14, 15

*In re Mego Fin. Corp. Sec. Litig.,*
      213 F.3d 454 (9th Cir. 2000).......................................................................................8

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,*
      227 F.R.D. 553 (W.D. Wash. 2004).............................................................................3

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
      19 F.3d 1291 (9th Cir. 1994).................................................................................9, 12

*Ingram v. Coca-Cola Co.,*
      200 F.R.D. 685 (N.D. Ga. 2001) ................................................................................8

*Kirkpatrick v. Ironwood Comm'n. Inc.,*
      2:05-cv-01428 (W.D. Wash. Feb. 23, 2009) ..............................................................14

*Knight v. Red Door Salons, Inc.*,
  No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009).....................................12

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) .........................................................................................13

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ...........................................................................................................3

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) .............................................................................................9

*Reese v. Dycom Indus., Inc.*,
  2:09-cv-00606-MJP (W.D. Wash. April 23, 2010) .........................................................14

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994) .............................................................................................4

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ...............................................................................................9

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ....................................................................................8

*Wright v. Linkus Enter., Inc.*,
  259 F.R.D. 468 (E.D. Cal. 2009) ...........................................................................9, 10, 11, 12

## FEDERAL RULES

Fed. R. Civ. P. 23(e)(1)(A) ......................................................................................................1

## OTHER AUTHORITIES

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002) .........15

*Manual for Complex Litigation* (Fourth) § 21.62 (2008) .............................................................8

*Manual for Complex Litigation* (Fourth) § 14.121(2008) ..........................................................12

*Manual for Complex Litigation* (Fourth) § 14.122 (2008) .........................................................12

## I.  INTRODUCTION AND RELIEF REQUESTED

Plaintiffs respectfully submit this memorandum in support of final approval of the settlement agreement that was reached between Plaintiffs and Defendant Prince Telecom, LLC ("Defendant" or "Prince Telecom").

## II.  AUTHORITY AND ARGUMENT

Before granting final approval of a class action settlement, a reviewing court must first find the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(A); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  The record before the Court demonstrates that the Stipulation of Settlement as modified by the Addendum to Stipulation of Settlement satisfies this standard and that final approval is appropriate.

### A.  The Settlement Is the Result of Informed, Arm's-Length Negotiations

To reach this settlement, the parties to this action engaged in extensive negotiations, including three lengthy in-person settlement conferences.  The discussions culminated in a Stipulation of Settlement Between Plaintiffs and Defendant (hereinafter "Stipulation of Settlement"), which is on file with the Court.  (Dkt. No. 8, Ex. A.)  Pursuant to the Stipulation of Settlement, Prince Telecom agreed to pay $455,000.  (*Id.* ¶ 11.)  This amount included any approved enhancement payments to the Class representatives and attorney's fees and costs. (*Id.*)

After the Court granted preliminary approval of the settlement and Plaintiffs mailed notice, Defendant discovered additional information that affected the settlement, including 17 additional Settlement Class Members who had deductions from their pay yet never received the Initial Notice.  (*See* Dkt. No. 25.)  Defendant also discovered that 136 Settlement Class Members had more actual deductions than previously disclosed and that 40 Settlement Class Members had fewer actual deductions than previously disclosed.  (*Id.*)

Defendant shared this information with the attorneys representing the Settlement Class Members and the two sides engaged in further arm's-length negotiations in order to arrive at a

proposed settlement that incorporates the additional information.  (*See* Dkt. No. 25.)  As a result of those negotiations, Defendant agreed to increase the gross settlement payment from $455,000 to $510,000 to cover the additional Settlement Class Members and deductions identified and to pay for additional costs and attorneys' fees.  (*See* Declaration of Toby J. Marshall in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Marshall Decl."), Ex. A)

The settlement is the result of a thorough investigation by the parties.  In the first few months of 2010, Class counsel began investigating alleged wage and hour violations by Prince Telecom in Oregon.  (Dkt. No. 6 ¶ 2.)  As part of their investigation, Class counsel interviewed several non-managerial installation technicians who had worked for Prince Telecom in Oregon. (*Id*.)  Class counsel also researched and analyzed Oregon wage and hour laws.  (*Id*.)  On June 28, 2010, Class counsel contacted Prince Telecom to notify it that their clients, Plaintiffs Tyson Koski, Kevin Rickey and John Schlichenmayer, intended to file a class action lawsuit in the United States District Court for the District of Oregon at Portland on behalf of non-managerial installation technicians working for Prince Telecom in Oregon State (the "Action").  (*Id*. ¶ 3.) Class counsel sent Prince Telecom a copy of the draft complaint and offered to enter into a tolling agreement in the event Prince Telecom wanted to consider the possibility of an early resolution of the case.  (*Id*.)  A few days later, the parties finalized and signed a tolling agreement.  (*Id*.)

On July 12, 2010, Plaintiffs sent a Prince Telecom's counsel a letter requesting that Prince Telecom produce assorted documents related to Prince Telecom's wage and hour practices.  (*Id*. ¶ 4.)  Less than three weeks later, Prince Telecom produced thousands of pages of responsive materials.  (*Id*.)  Class counsel reviewed these materials and conducted further research and analysis into the factual background of the case and the legal claims being sought. (*Id*.)  Both sides were well-informed regarding the strengths and weaknesses of their respective positions.

As the Court recognized in its preliminary approval order, "The Stipulation of Settlement is the result of arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of this case in particular." (Dkt. No. 22 ¶ 5.) The fact that the parties negotiated further relief for the Class when they discovered that the Class was larger than they originally believed provides further support for this finding. Arm's-length negotiations conducted by competent counsel after extensive discovery are *prima-facie* evidence of a settlement that is fair and reasonable. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 567 (W.D. Wash. 2004).

**B.      The Class Members Have Received the Best Notice Practicable**

On January 12, 2011, counsel for Prince Telecom provided Class counsel with a list in electronic format containing the names of each potential Settlement Class Member, social security numbers, each potential Settlement Class Members' relevant dates of employment in the covered positions, and mailing addresses (the "Class List"). (Declaration of Matthew Zuchetto in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Zuchetto Decl.") ¶ 3) After receiving the spreadsheet, Class counsel entered the Class members' addresses into a FileMaker Pro database. *Id.*

On January 27, 2011, Class counsel mailed a notice packet to everyone listed on the Class List, 887 in all. *Id.* ¶ 4. Included in those notice packets was an explanation of the settlement's terms, a statement of the Class member's rights, a proof of claim form (for members who want to recover money from the settlement fund), and instructions for submitting exclusion requests or objections. *See id.*, Ex. A. Each proof of claim form listed the Class member's estimated recovery from the settlement. *Id.*

After the initial mailing, Class counsel promptly re-mailed all notice packets that were returned by the U.S. Postal Service with forwarding address information. *Id.* ¶ 6. For notice packets that were returned without forwarding information, Class counsel conducted advanced searches to locate current addresses. *Id.*

On March 2, 2011, Defendant informed Class counsel that the Class list provided to Class counsel was incomplete and that the deduction data contained errors. *Id.* ¶ 5. *See* Section II.A, *supra.* In light of the new information, the Parties agreed to send supplemental notice to all Settlement Class Members, informing them of the changes to the settlement and the fact that the dates by which members may submit claim forms, exclusions requests or objections had been extended. The parties also agreed to send revised initial notice packets to the 17 Settlement Class Members who never received the initial notice. Class counsel sent the supplemental notice and revised notice packets on March 11, 2011. As of April 14, 2011, notice has been successfully mailed to 828 of the 904 Class members, a success rate of 91.59 percent. *Id* ¶ 6. This satisfies the requirements of due process. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

**C.      Class Members Have Not Objected to the Settlement**

Pursuant to the Court's preliminary approval order, any Class member who wanted to contest approval of the Stipulation of Settlement had to do so within 30 days of the initial notice mailing by filing a written objection with the Court and serving that objection on Class counsel and counsel for Prince Telecom. (Dkt. No. 22 ¶ 11.) The Court's order provided that Class members who failed to submit a timely objection in the manner provided by the Court would be deemed to have waived such objections and are foreclosed from opposing the fairness or adequacy of the proposed settlement agreement, unless otherwise ordered by the Court. (*See id.*) In light of the parties' Addendum to the Stipulation of Settlement, the Court extended the deadline for objections to April 25, 2011. (Dkt. No. 25.) As of April 14, Class counsel have

not received any objections to the settlement agreement.  (Marshall Decl. ¶ 3; Zuchetto Decl. ¶ 9.)  Likewise, no objections have been filed with the Court.  (*See id.*)

**D.     No Class Members Have Chosen to Opt Out of the Settlement**

Pursuant to the Court's preliminary approval order, any Settlement Class Member wishing to be excluded from the settlement was required to submit a Request for Exclusion to Class counsel postmarked no later than 30 days after the initial mailing of the notice.  (Dkt. No. 22 ¶ 10.)  As with the objection deadline, the Court extended this deadline to April 11, 2011 in order to provide time to disseminate notice to the Settlement Class Members who had been omitted from the initial list and to send supplemental notice to all Settlement Class Members, informing them of the changes and of the new deadlines to opt out or object to the settlement. (Dkt. No. 25.)  As of April 14, 2011, Class counsel have not received any requests for exclusion from Settlement Class Members.  (Marshall Decl. ¶ 4; Zuchetto Decl. ¶ 8.)

**E.     Hundreds of Settlement Class Members Have Filed Claims**

The deadline for Settlement Class Members to submit claim forms is May 11, 2011.  As of April 14, 2011, Class counsel have received a total of 375 unique claims, which represents 41.5 percent of the Class.  (Marshall Decl. ¶ 5; Zuchetto Decl. ¶ 7.)

**F.     The Settlement Agreement Provides Substantial Benefits to the Class**

As noted above, Prince Telecom has agreed to pay $510,000 into a settlement fund that benefits Plaintiffs and Class members.  (Marshall Decl., Ex. A.)  This fund will cover payments to the Settlement Class, notice and administration costs, reasonable attorneys' fees and litigation expenses and enhancement awards, as approved by this Court.  (*Id.*)

The funds distributed to the Settlement Class will be allocated in a manner that is fair and reasonable, and no segment of the Settlement Class is excluded from relief or consigned to inferior benefits.  (Marshall Decl. ¶ 6.)  Each class member's share will be based on the member's amount of actual wage deductions for cell phones, tools, uniforms, etc. and the length of time the member worked as a non-managerial installation technician for Prince

Telecom in Oregon during the relevant periods.  (*Id.*)  For example, an employee who had $1,000 in deductions will recover twice as much as an employee who had $500 in deductions.  (*Id.*)  Likewise, an employee who worked 12 months during the period from July 1, 2008 to July 1, 2009 will recover twice as much as an employee who worked 6 months during that same period.  (*Id.*)

If approved by the Court, each of the three named Plaintiffs will receive a $1,000 service award from the GFV for their role as Class representatives.  (Marshall Decl., Ex. A ¶ 3.)  In addition, if approved by the Court, Class counsel will receive $127,500 in fees and $9,376.64 in costs from the GFV.  (*Id.*)  The remaining $370,123.36 will then be distributed on a proportional basis to participating Class members.  (*Id.*)

Payments from the fund will be split into three parts: approximately $150,000 from the NFV will be used to compensate Settlement Class members for claims of improper deductions (the "Deduction Payment"); approximately $110,000 will be used to compensate Settlement Class members for claims of unpaid overtime (the "Overtime Payment"); and approximately $110,000 will be used to compensate Settlement Class members for claims of penalties and interest (the "Penalties and Interest Payment").  (*See* Marshall Decl., Ex. A ¶ 3)  If fewer than all class members submit valid and timely claim forms, the unclaimed portion of the NFV will be distributed proportionately to those class members who are qualified claimants.  (*Id.*)  No funds will revert to Prince Telecom.  (*Id.*)

As of April 14, 2011, Class counsel have received 375 timely and valid claim forms from Settlement Class Members.[1]  (Marshall Decl. ¶ 5.)  Currently, the average payout per claimant will be $987.  (*Id.*)  The highest payout will be more than $5,350, and 66 of the claimants will receive between $2,000 and $5,000.  (*Id.*)

---

[1] The deadline for the submission of claims is May 11, 2011.  At the final approval hearing scheduled for May 18, 2011, Class counsel will be prepared to update the Court regarding the final number of claims received.

These awards are substantial in light of the relief available under the law.  Plaintiffs'
primary claims in these cases centered on Prince Telecom's wage deductions and failure to pay
for overtime owed for all hours worked, whether due to off-the-clock work or missed meal
breaks.  (Marshall Decl. ¶ 7.)  With respect to the deduction claims, claimants will currently
recover 62.3 percent of their actual wage deductions.  (*Id.*)  With respect to the overtime claim,
claimants will currently receive $46.89 for every month worked from July 1, 2008 to July 1,
2009, and $23.45 for every month worked from July 1, 2009 to January 4, 2011.[2]  (*Id.*)  The
vast majority of Class members were employed on a piecework basis, and each of these
members could recover only 50 percent of his regular rate of pay for each hour of work.  (*Id.*)
The average regular rate during the Class period was approximately $17.81 per hour, which
results in an overtime premium of $8.91 per hour.  (*Id.*)  Thus, an award of $46.89 for every
month worked from July 1, 2008 to July 1, 2009 is the equivalent of being compensated for
approximately 5.26 hours of unpaid overtime per month, and an award of $23.45 per month for
the other time period is the equivalent of being compensated for approximately 2.63 hours of
unpaid overtime per month.  (*Id.*)

Based on interviews with Class members, Class counsel are confident that the monetary
relief provided for by the Stipulation of Settlement is significant and fair, especially
considering the risks inherent to litigation and the various defenses available to Prince
Telecom.  (*Id.*)

**G.    The Class Representative Service Awards Are Fair and Reasonable**

Subject to the Court's approval, each of the three Class representatives will receive a
$1,000 incentive or service award from the settlement fund.  (Dkt. No. 8, Ex. A ¶ 14(c))  These
awards will compensate the representatives for the time and risk they undertook in prosecuting
the claims against Prince Telecom on behalf of approximately 904 employees.  Among other

---

[2] The difference in the payments for these two periods is due to the fact that Prince Telecom made significant
changes to its overtime pay compliance program starting in July 2009.

things, the Class representatives greatly assisted counsel in understanding and developing the factual background of these cases, prosecuting the Class claims, and addressing Prince Telecom's defenses.  (Marshall Decl. ¶ 8.)  The representatives were ready and willing to respond to written discovery, produce documents, and make themselves available for depositions.  (*Id*.)  The Class representatives also helped Class counsel locate Class members and other witnesses.  (*Id*.)  All of the representatives approved of the terms of the Stipulation of Settlement and the Addendum.  (Dkt. No. 8, Ex. A at 22; Marshall Decl., Ex. A at 10–11.)

The efforts of these three individuals have directly benefited hundreds of employees and greatly advanced the objectives of the wage and hour laws of Oregon.  Small service awards, which are in addition to claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits such as the action before this Court.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (approving incentive awards of $5,000 from a total settlement of $1.75 million); *see also Manual for Complex Litigation* (Fourth) § 21.62, at 469 n.971 (2008) (service awards may be "warranted for time spent meeting with class members, monitoring cases, or responding to discovery").

In light of the contributions that the Class representatives made in these cases, the proposed service awards are fair and reasonable.  Indeed, when compared to incentive awards granted in other cases, the $1,000 payments requested here are modest.  *See, e.g.*, *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving service awards of $300,000 to each named plaintiff); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299–300 (N.D. Cal. 1995) (approving $50,000 service award); *Carroll v. Blue Cross & Blue Shield*, 157 F.R.D. 142, 143 (D. Mass. 1994), *aff'd* 34 F.3d 1065 (1st Cir. 1994) ("the class representatives shall receive payments of $7,500 each as compensation for services rendered to the class in initiating and prosecuting this action"); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp.

27, 32 (E.D. Pa. 1985) (stating "the propriety of allowing modest compensation to class representatives seems obvious," and awarding $20,000 to two named class representatives).

**H.      The Payment of Attorneys' Fees and Costs Is Fair and Reasonable**

Pursuant to the settlement agreement, Class counsel seek an award of $127,500 for their attorneys' fees.  This amounts to 25 percent of the settlement's value, also referred to as the "common fund."  Prince Telecom does not contest Class counsel's application, and the Court has preliminarily approved the award.  Where counsel to a class action seek fees from the common fund, courts use one of two methods to determine whether the request is reasonable: the "percentage of the fund" method or the "lodestar" method.  Class counsel's request for fees is reasonable under either analysis.

1.      The Percentage of the Fund Analysis Supports Counsel's Fee Request

The benchmark for an attorneys' fee award in the Ninth Circuit is twenty-five percent of the common fund.  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (citing *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).  When examining fees, "district courts in the Ninth Circuit 'should be guided by the fundamental principle that fee awards out of common funds be *reasonable under the circumstances*.'"  *Wright v. Linkus Enter., Inc.*, 259 F.R.D. 468, 476 (E.D. Cal. 2009) (citing *Chem. Bank v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994) (internal quotations omitted and emphasis in original)).  "In looking at the circumstances of each case, relevant factors may include early settlement, achievement of an excellent result, risk, and a showing of standard fees for similar litigation."  *Wright*, 259 F.R.D. at 476−77 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)).

All four factors demonstrate that Class counsel's request for $127,500 in attorneys' fees (25 percent of the common fund) is reasonable under the circumstances.  First, Class counsel have worked hard to achieve an early resolution of this case.  (*See generally* Dkt. Nos. 6, 7.)

Class counsel obtained substantial informal discovery from Prince Telecom, including information including wage and hour policies, payroll records, and personnel files.  (*See id.*) Class counsel then spent many hours analyzing the documents Prince Telecom provided and calculating potential damages.  (*See id.*)  In addition, Class counsel spent substantial time interviewing potential class members and evaluating their claims.  (*See id.*)  By working hard to accomplish these tasks in a short timeframe, counsel were able to efficiently negotiate a favorable and timely result for the Settlement Class members.

Of course, because of the early settlement, Class counsel have spent fewer hours prosecuting this action than they would have had the case proceeded to trial.  However, the common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."  *See Wright*, 259 F.R.D. at 477 (quoting *Van Gemert*, 444 U.S. at 478, (1980)).  Therefore, "awarding Plaintiffs' attorneys a percentage of the total settlement amount w[ill] adequately compensate Class counsel for the proposed settlement at an early stage in the litigation."  *Id.* Moreover, awarding Class counsel a reasonable percentage of the common fund promotes the public policy of encouraging timely settlements.  *Vizcaino*, 290 F.3d at 1051 (noting "it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief"); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (approving fee awards that amount to 30 percent of the common fund in part because such a benchmark "will encourage plaintiffs' counsel to move for early settlement").  Thus, the first factor weighs in favor of finding that the requested fee award is reasonable.

Second, Class counsel achieved an excellent result for the Settlement Class.  The settlement agreement creates a total award of $510,000.   After deducting the requested attorneys' fees, litigation expenses and enhancement awards, the net fund to be split among claimants will be approximately $370,000, currently resulting in an average recovery of $987. By comparison, in *Wright*—a case that involved facts and allegations similar to those here—the

average class member was entitled to approximately $625.00.  *See Wright*, 259 F.R.D. at 471 (class consisted of approximately 4,000 individuals, and defendant agreed to pay up to $2,500,000).  Indeed, compared to other recent Ninth Circuit wage and hour settlements, it is clear that Class counsel here achieved exceptional results for the class in a very short time.  *Cf., e.g.*, *Barcia v. Contain-A-Way*, No. 07 cv 938-IEG-JMA, 2009 WL 587844, *4 (S.D. Cal. March 6, 2009) (approving settlement of $2.5 million on behalf of 2,385 workers alleging unpaid wages, penalties for missed rest breaks, and ERISA benefits, with an average award of $776.00 per class member after fees and costs); *Hopson v. Hanesbrands Inc.*,  No. CV-08-0844 EDL, 2009 WL 928133, *2–3 (N.D. Cal. April 3, 2009) (approving settlement between a class of 217 employees and employer where settlement payment to class was approximately $280,350.00 and average award was $1,292 per member).  Given the results achieved, the requested fee is reasonable.

Third, Class counsel have devoted substantial resources to the prosecution of this case with no guarantee that counsel would be compensated for their time or reimbursed for their expenses.  To the contrary, payment of counsel's fees and expenses has always been contingent on a successful recovery of damages.  Thus, there was a substantial risk of nonpayment. Moreover, the Court has not yet certified the case as a class action, and Prince Telecom has steadfastly denied that class certification was appropriate.[3]  Prince Telecom also has denied liability for the claims Plaintiffs' have asserted, particularly claims arising after July 1, 2009, the date on which Prince Telecom instituted substantial changes to its overtime pay compliance program.  Even if Plaintiffs ultimately prevail at trial, a result that is not guaranteed, they likely face a long and costly appeals process.

Fourth, Plaintiffs' request is in line with fees requested in similar actions.  Class counsel have requested the 25 percent of the common fund, an amount which is equal to the Ninth

---

[3] For settlement purposes only, Prince Telecom has conditionally stipulated to class certification.  *See* Dkt. No. 8, Ex. A ¶ 6.

Circuit's benchmark.  In addition, the requested fee is consistent with fees awarded in recent Ninth Circuit cases involving similar wage and hour claims.  *See Wright*, 259 F.R.D. at 476 (granting class counsel's request for $625,000 in attorneys' fees, which amounted to 25 percent of the $2,500,000 common fund); *Barcia,* 2009 WL 587844, *6 (same); *Hopson*, 2009 WL 928133, *12–13 (approving attorneys' fee award that amounted to approximately 25 percent of the common fund); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367 at *6 (N.D. Cal. Feb. 2, 2009) (awarding fees amounting to 30 percent of the common fund); *Glass v. UBS Fin. Servs., Inc.*, 331 Fed. Appx. 452, 2009 WL 1360920, *2 (9th Cir. May 14, 2009) (affirming trial court's decision to award class counsel fees amounting to 25 percent of the common fund).

In short, Counsel's fee request is reasonable under the "percentage of the fund" method. While this approach provides an independent ground for granting the fee request, a "cross-check" under the lodestar method also demonstrates that Counsel's request is reasonable.  *See MCL 4th* § 14.121 (noting "[a] number of courts favor the lodestar as a backup or cross-check on the percentage method when the fees might be excessive").

    2.    <u>Lodestar Analysis Supports Counsel's Fee Request</u>

Under the lodestar method, the district court first calculates counsel's lodestar by multiplying the reasonable hours expended by a reasonable hourly rate.  *See Vizcaino*, 290 F.3d at 1050−51.  The court may then enhance the lodestar with a multiplier, if necessary, to arrive at a reasonable fee.  *See id*. at 1052–54 (approving multiplier of 3.65 and citing a survey of class settlements from 1996-2001 indicating that most multipliers range from 1.0 to 4.0); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 n.2 (9th Cir. 1994) (citations omitted).  Upward adjustments may be appropriate based on the results obtained, the quality of representation, the complexity and novelty of the issues presented, the risk of nonpayment, and any delay in payment.  *MCL 4th* § 14.122, at 263.

Since they first began investigating the claims in this case over a year ago, Class counsel have incurred more than $150,000 in fees and expended nearly $7,200 in litigation expenses related to the prosecution of this action. (Marshall Decl. ¶¶ 9–10; Zuchetto Decl. ¶¶ 16–18.) Counsel estimate they will incur approximately $14,500 in fees and $2,100 in costs to see this case through its final resolution, including the work necessary to oversee that the claims process is properly carried out and attending the hearing on final approval. (*Id.*) In all, Class counsel have devoted more than 650 hours to the investigation, development, litigation and resolution of this complex case. (*See* Dkt. No. 6 ¶ 19; Dkt. No. 7 ¶ 7; *see also* Marshall Decl. ¶ 9; Zuchetto Decl. ¶ 15.) This includes time spent investigating the claims of the Settlement Class Members, conducting discovery, researching and analyzing legal issues, calculating damages, and engaging in settlement negotiations.[4] Class counsel anticipate spending approximately 50 additional hours seeing this case through its final resolution.

Throughout this case, Class counsel prosecuted the claims of the employees efficiently and effectively. Knowing it was possible they would never be paid for their work, counsel had no incentive to act in a manner that was anything but economical. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[L]awyers are not likely to spend unnecessary time on contingency cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee."). That said, counsel took their charge seriously and endeavored to represent the interests of the class members to the greatest extent possible.

The lodestar calculations of Class counsel are based on reasonable hourly rates. Class counsel set their rates for attorneys and staff members based on a variety of factors, including among others: the experience, skill and sophistication required for the types of legal services typically performed; the rates customarily charged in the markets where legal services are

---

[4] In providing this general overview, Plaintiffs and Class counsel do not waive and, in fact, specifically reserve all protections afforded by the attorney-client privilege and work product doctrine.

typically performed; and the experience, reputation and ability of the attorneys and staff members.  (Dkt. No. 6 ¶ 20; Dkt. No. 7 ¶ 10.)  The rates charged for attorneys and staff members working on this matter range from $50.00 to $490.00, with the majority of the work performed by Mr. Marshall at an hourly rate of $325.00 and Mr. Zuchetto at an hourly rate of $300.00.  (*See* Dkt. No. 6 ¶ 20; Dkt. No. 7 ¶ 7, 10; *see also* Marshall Decl. ¶ 9; Zuchetto Decl. ¶ 15.)  Federal courts have found these rates to be reasonable.  *See Reese v. Dycom Indus., Inc.*, 2:09-cv-00606-MJP (W.D. Wash. April 23, 2010) (approving class counsel's hourly rates in a case with identical facts and similar legal issues); *Kirkpatrick v. Ironwood Comm'n. Inc.*, 2:05-cv-01428 (W.D. Wash. Feb. 23, 2009) (approving class counsel's hourly rates following a reasonableness review in consolidated wage and hour cases involving Washington and Oregon satellite dish installers).[5]  In light of the detailed breakdown provided by counsel in their respective declarations, and the arguments offered above, Class counsel submit that their lodestar calculations are based on reasonable rates.

In addition to attorneys' fees, Class counsel respectfully request an award of $9,376.64 in litigation expenses.  The expenses Class counsel incurred in this case include the following: (1) copying, mailing and messenger expenses; (2) computer research expenses; (3) factual investigation expenses; (4) travel expenses; and (5) notice expenses.  (*See* Marshall Decl. ¶ 9–11; Zuchetto Decl. ¶ 16–18.)  These out-of-pocket costs were necessary to secure the resolution of this litigation.  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177–1178 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in a class action litigation).  "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement."  *In re Media Vision*

---

[5] These decisions are attached as Exs. B–C to the Marshall Decl.

*Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970)).

All in all, Class counsel worked hard to bring this case to a successful resolution in the face of a staunch defense, and the fees and costs payment provided for in the settlement is fair and reasonable.

### III.  CONCLUSION

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See Class Plaintiffs* , 955 F.2d at 1276 ("strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); *see also* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002) (gathering cases).

The settlement that Plaintiffs reached with Prince Telecom is reasonable and fair. Indeed, the payment of $370,000 to the Class is outstanding in light of the recoveries potentially available under the law and the risks of continued litigation.  As for attorneys' fees and costs, the payment of $127,500 to Class counsel for fees and $9,376.64 for costs is appropriate given the substantial work counsel performed and the successful resolution achieved on behalf of the Class.  For these reasons, Plaintiffs respectfully request that the Court enter the Proposed Order of Final Settlement Approval and of Dismissal with Prejudice submitted herewith.

At the final approval hearing scheduled for 11:30 a.m. on Wednesday, May 18, 2011, Class counsel will address any remaining questions the Court may have.

DATED this 15th day of April, 2011.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By: /s/Toby J. Marshall, *Admitted Pro Hac Vice*
Jennifer R. Murray, OSB #100389
Email: jmurray@tmdwlaw.com
Toby J. Marshall, *Admitted Pro Hac Vice*
Email: tmarshall@tmdwlaw.com
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

Michael J. Estok, OSB #090748
Email: mestok@lindsayhart.com
LINDSAY, HART, NEIL & WEIGLER, LLP
1300 SW Fifth Avenue, Suite 3400
Portland, Oregon 97201-5640
Telephone: (503) 226-7677
Facsimile: (503) 226-7697

Matthew J. Zuchetto, *Admitted Pro Hac Vice*
Email: matthewzuchetto@mac.com
THE SCOTT LAW GROUP, PS
926 West Sprague Avenue, Suite 680
Spokane, Washington 99201
Telephone: (509) 455-3966
Facsimile: (509) 455-3906

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I, Toby J. Marshall, hereby certify that on April 15, 2011, I electronically filed the
foregoing with the Clerk of the Court using the CM/ECF system which will send notification of
such filing to the following:

Carter Mann
Email:  cmann@robertskaplan.com
ROBERTS KAPLAN LLP
601 SW 2nd Avenue, Suite 1800
Portland, Oregon  97204
Telephone:  (503) 221-2219
Facsimile:  (800) 601-8869

Stellman Keehnel, *Admitted Pro Hac Vice*
Email:  stellman.keehnel@dlapiper.com
DLA PIPER
701 Fifth Avenue, Suite 7000
Seattle, Washington  98104-7044
Telephone:  (206) 839-4888
Facsimile:  (206) 494-1790

Eric S. Beane, *Admitted Pro Hac Vice*
Email:  eric.beane@dlapiper.com
DLA PIPER
1999 Avenue of the Stars, Suite 400
Los Angeles, California  90067-6023
Telephone:  (310) 595-3005
Facsimile:  (310) 595-3305

*Attorneys for Defendant Prince Telcom, LLC*

DATED this 15th day of April, 2011.

TERRELL MARSHALL DAUDT & WILLIE PLLC


By:  /s/Toby J. Marshall, *Admitted Pro Hac Vice*
Toby J. Marshall, *Admitted Pro Hac Vice*
Email: tmarshall@tmdwlaw.com
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
Telephone: (206) 816-6603

*Attorney for Plaintiffs*


MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT - 17